UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

CASE NO.: 6:10cv-1886-Orl-35DAB

ENVIRACARBON, INC.
a Florida Corporation,

    Plaintiff,

vs.

DAVID COUCH, and
WILLIAM M. COUCH a/k/a
BILLY COUCH,

    Defendants.
_____/

## COMPLAINT

COMES NOW Plaintiff, ENVIRACARBON, INC. (hereinafter "Plaintiff" or "ECI"), a Florida corporation, by and through its undersigned counsel, and hereby files this Complaint against Defendants, DAVID COUCH (hereinafter "D. COUCH") and WILLIAM M. COUCH a/k/a BILLY COUCH (hereinafter "B. COUCH"), and as grounds thereof states as follows:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of costs, interest and attorney's fees, between citizens of different States. This Court has jurisdiction pursuant to 28 U.S.C §1332.

2. Venue is proper in the Middle District of Florida, as Defendant, D. COUCH, breached his verbal employment contract with Plaintiff in Volusia County, Florida, by, among other things, converting intellectual property owned by Plaintiff, which was developed at Plaintiff's principal place of business in Volusia County, and maintained in part in Volusia County, to his own use in violation of his duties and obligations to Plaintiff as its employee.

1

## PARTIES

3. Plaintiff, ENVIRACARBON, INC., is a Florida Corporation with its principal place of business located at 3245 South Atlantic Avenue, Suite 804, Daytona Beach Shores, FL 32118.

4. At all material times hereto, Defendant, D. COUCH, was over the age of eighteen (18), a resident of the State of Tennessee, and is subject to the jurisdiction of this Court as Defendant breached his verbal employment contract with Plaintiff in the State of Florida by, among other things, converting intellectual property owned by Plaintiff in violation of his duties and obligations to Plaintiff as its employee.

5. At all material times hereto, Defendant, B. COUCH, was over the age of eighteen (18), a resident of the State of Tennessee, and is subject to the jurisdiction of this Court as Defendant conspired with D. COUCH to, among other things, convert intellectual property owned by Plaintiff.

## FACTS COMMON TO ALL CAUSES OF ACTION

6. Plaintiff, ECI, is a company that specializes in the development of clean-coal technology for coal energy companies and power plants. In connection therewith, ECI has developed certain proprietary technology known as the Enviranization process, which looks like coal, ships like coal, burns like coal but without the environmental impact. The Enviranization process alters the bio-mass feedstock into a product that looks and burns like coal, but with negligible sulfur and ash content. This unique blended green coal and bio-mass product, called EnvirAnized Coal, can then be directly fired into coal burning power plants without special treatment.

7. On or about June 2, 2010, D. COUCH was retained by ECI to serve as its Vice President of design and manufacturing, and during his tenure he assisted in the development of the proprietary technology of ECI in his capacity as an employee of ECI. As such, any and all intellectual property developed by D. COUCH in connection with the development of ECI's proprietary technology was, at all times, owned by ECI.

7. During his tenure as an employee and officer of ECI, D. COUCH was paid One Thousand Five Hundred Dollars ($1,500.00) per week.

8. Upon information and belief, while employed by ECI, D. COUCH consulted with his brother, B. COUCH in the development of the proprietary technology, and in so doing, divulged and otherwise made available the proprietary technology of ECI to B. COUCH.

9. During the first week of November, 2010, in an effort to further market and develop its proprietary technology, several of ECI's officers and employees, including D. COUCH, met with several representatives from Taggart Global, LLC, which is an international engineering and construction company with expertise in turnkey design, supply, construction and commissioning of coal preparation plants and material handling systems.

10. Shortly after ECI's meeting with Taggart Global, LLC, D. COUCH surreptitiously and without ECI's consent contacted Taggart Global, LLC and made a series of misrepresentations in an effort to solicit Taggart Global, LLC for his own benefit in contravention of his duties and obligations to ECI.

11. Specifically, D. COUCH stated to representatives of Taggart Global, LLC that he owned and controlled the proprietary technology which ECI was planning on manufacturing as its principal product, that ECI stole its proprietary technology from him and that ECI was nothing more than a small start-up business with little capital and expertise.

3

12. Furthermore, D. COUCH represented to Taggart Global, LLC that he had assembled his own team of coal industry "experts" who have agreed to form a new venture with D. COUCH to compete with ECI. ECI subsequently became aware that this team of "experts" consisted of B. Couch, Mr. Phillip Rasnick, and Mr. David S. Kashdan, all of whom had previously agreed to be members of ECI's Advisory Board, and were identified as members of ECI's Advisory Board on ECI's website and as part of various investment documents that ECI previously circulated to third parties.

13. D. COUCH made the above referenced misrepresentations to Taggart Global, LLC's representatives in an attempt to directly compete with ECI and usurp ECI's business opportunity, as he was aware that ECI was attempting to formalize a profitable business venture with Taggart Global, LLC at the time of his misrepresentations whereby Taggart Global, LLC was contemplating making a substantial investment in ECI.

14. ECI terminated D. COUCH immediately after it discovered that D. COUCH made the above referenced material misrepresentations to representatives of Taggart Global, LLC.

15. Contemporaneously therewith, ECI demanded D. COUCH immediately turn over all notes, drawings, calculations, research papers, samples, and any and all other work product that he has produced, or that others have produced in collaboration with him, during the period of his employment with ECI. To date, D. COUCH has chosen to ignore ECI's demand, and has retained possession of the above referenced documents and information.

16. Furthermore, in what is assumed to be a response to ECI's demand, ECI received what is purportedly a hand written invoice from B. COUCH, which incredulously requests $10,000,000.00 for services he allegedly performed in connection with the development of ECI's proprietary technology.

17. All conditions precedent have either been met by Plaintiff or have been waived by Defendants.

## COUNT I
## BREACH OF DUTY OF LOYALTY

18. Plaintiff re-alleges and reaffirms Paragraphs 1 through 17, as though fully set forth herein again and at length.

19. D. COUCH breached his duty of loyalty to ECI and was a faithless employee to ECI by taking affirmative steps toward forming a rival clean coal technology venture prior to being terminated from ECI.

20. D. COUCH spent a considerable amount of time and effort in the employment and formation of said rival clean coal technology venture while still being employed by ECI. D. COUCH used company time and company resources (including use of ECI's proprietary technology) in his effort to form a rival clean coal technology company.

21. Even more egregiously, during his employment with ECI, D. COUCH directly solicited at least one potential investor of ECI, Taggart Global, LLC, to invest in his rival clean coal technology company, and convinced several members of ECI's advisory board to join said company.

22. Additionally, D. COUCH failed to perform his duties in a satisfactory manner and acted in a reckless manner towards the interests of ECI, which caused ECI to incur substantial damages.

23. D. COUCH's misconduct while employed by ECI was greater than a slight default in his obligations to ECI.

24. D. COUCH forfeited his right to compensation for services rendered by him to ECI since the first date of this misconduct to the date of his termination from ECI because his actions constituted a breach of his duty of loyalty to ECI.

25. ECI was not aware of D. COUCH's disloyal behavior at the time ECI tendered payment to D. COUCH for services rendered to ECI.

WHEREFORE, ECI demands judgment against Defendant, D. COUCH, for breach of his duty of loyalty to ECI, and breach of his verbal employment agreement with ECI, award ECI compensatory damages, reasonable costs of bringing this action, pre-judgment interests, and for any other and further relief this Court deems just and proper.

## COUNT II
## TORTIOUS INTEFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP

26. Plaintiff re-alleges and reaffirms Paragraphs 1 through 17, as though fully set forth herein again and at length.

27. ECI was in negotiations with Taggart Global, LLC, whereby Taggart Global, LLC expressed interest in investing a substantial sum of money in excess of $10,000,000.00 in ECI.

28. D. COUCH was involved in the negotiations between Taggart Global, LLC and ECI, as he participated in said negotiations while employed by ECI.

29. Prior to his termination from ECI, D. COUCH was scheming to leave ECI and begin a separate relationship with Taggart Global, LLC.

30. As part of his scheme, D. COUCH represented to representatives of Taggart Global, LLC that he owned and controlled the proprietary technology which ECI was planning on manufacturing as its principal product, and that ECI was nothing more than a small start-up business with little capital and expertise.

## COUNT III
## DEFAMATION

35. Plaintiff re-alleges and reaffirms Paragraphs 1 through 17, as though fully set forth herein again and at length.

36. ECI began negotiating with Taggart Global, LLC for Taggart Global, LLC to make a substantial investment in ECI.

37. D. COUCH was acutely aware of the negotiations that were taking place between ECI and Taggart Global, LLC, as he directly participated in said negotiations.

38. In or about the first week of November, 2010, D. COUCH surreptitiously contacted a representative of Taggart Global, LLC in an effort to convince Taggart Global, LLC to invest with him and his new venture instead of with ECI.

39. In furtherance thereof, D. COUCH stated to representatives of Taggart Global, LLC that he owned and controlled the proprietary technology which ECI was planning on manufacturing as its principal product, that ECI stole its proprietary technology from him, and that ECI was nothing more than a small start-up business with little capital or expertise (hereinafter referred to as the "Defamatory Statements").

40. The Defamatory Statements adversely impacted ECI's reputation and goodwill, which ECI and its principals have carefully cultivated in the coal industry.

41. The Defamatory Statements are based on false allegations of fact relating to the honesty and performance of ECI in its industry, including untrue allegations that it stole and otherwise did not own its intellectual property.

42. The factual allegations on which the Defamatory Statements are based are objectively capable of proof or disproof, and therefore do not constitute expressions of pure opinion.

43. As the statement contains language that adversely affects the reputation of ECI, it is defamatory with respect to Plaintiff.

44. As a result of the Defamatory Statements that were published to third parties, Plaintiff has suffered damages, including damage to its reputation and goodwill, and it has interfered with Plaintiff's ability to do business with Taggart Global, LLC and its affiliates and subsidiaries.

45. The Defamatory Statements were made by D. COUCH without any privilege to do so, whether absolute or qualified.

46. The Defamatory Statements at issue do not relate to a matter of public concern and instead were published for D. COUCH's own profit.

47. In causing the defamatory language at issue to be published to third persons, D. COUCH acted with malice, bad faith, and/or with the willful and wanton disregard of the rights of Plaintiff and, accordingly, Plaintiff is entitled to punitive damages against D. COUCH.

WHEREFORE, Plaintiff, ECI, demands judgment against Defendant, D. COUCH, for compensatory, consequential, and punitive damages, costs incurred in bringing this action, and any further relief this Court deems just and proper.

## COUNT IV
## INJUNCTION

48. Plaintiff re-alleges and reaffirms Paragraphs 1 through 17, as though fully set forth herein again and at length.

49. D. COUCH has acquired and is in possession of Plaintiff's trade secrets as a result of his previous employment with Plaintiff.

50. Specifically, D. COUCH is in possession of: (a) Plaintiff's clean coal byproduct samples, which not only are demonstrative of the efficacy of the intellectual property of Plaintiff, but contained within the samples are the proprietary chemical processes of Plaintiff's technology; (b) documentation containing chemical analysis of Plaintiff's clean coal technology; (c) Plaintiff's potential and actual investor lists; and (d) drafts of Plaintiff's proposed Private investment documents from which ECI stood to raise in excess of $10,000,000.00, all of which were developed by Plaintiff and kept as confidential and proprietary information.

51. Plaintiff has undertaken efforts to protect these trade secrets by only divulging said trade secrets to its key employees and prospective customers and investors with the understanding that they are not to be disseminated to third parties without the express permission of Plaintiff.

52. Upon information and belief, D. COUCH is using these trade secrets without the approval or authority of Plaintiff.

53. At all material times, D. COUCH knew or should have known that the dissemination of Plaintiff's trade secrets would cause Plaintiff irreparable harm.

54. D. COUCH's actions are a clear and willful violation of Chapter 688 of the Florida Statutes (the Florida Trade Secrets Act).

55. The issuance of an injunction would preserve and advance important property and business interests, would protect the valuable intellectual property that Plaintiff, at its great cost and expense, has developed, would serve to maintain the integrity of the confidential and privileged information and documents that Plaintiff has developed, which are Plaintiff's trade

secrets, and would serve to deter others who have gained access to confidential and privileged information from using such information and knowledge of customer identities to their benefit and to the detriment of those similarly situated as Plaintiff.

56. Plaintiff has no adequate remedy at law to prevent D. COUCH from continuing to use Plaintiff's trade secrets.

57. Plaintiff is likely to succeed on the merits in that D. COUCH is knowingly and intentionally violating Chapter 688 of the Florida Statutes (the Florida Trade Secrets Act).

58. Accordingly, an injunction should issue (a) enjoining D. COUCH from using Plaintiff's trade secrets and any other confidential and proprietary information belonging to Plaintiff; and (b) returning to Plaintiff any and all material containing its trade secrets that are in the care, custody and control of D. COUCH.

59. Plaintiff has retained the undersigned law firm to represent it in this action and is obligated to pay it reasonable attorney's fees for its services.

60. Plaintiff is entitled to an award of its attorney's fees pursuant to Section 688.005 of the Florida Statutes.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) enjoin D. COUCH from:

(i) using Plaintiff's trade secrets and any other confidential and proprietary information belonging to Plaintiff; and

    (ii) returning to Plaintiff any and all material containing its trade secrets that are in the care, custody and control of D. COUCH;

  (b) award Plaintiff its attorney's fees and costs; and

  (c) award any further relief this Court deems just and appropriate.

**COUNT V**
**CONSPIRACY**

  61. Plaintiff re-alleges and reaffirms Paragraphs 1 through 17, as though fully set forth herein again and at length.

  62. The Defendants, together, conspired to have D. COUCH breach his duty of loyalty reposed in him by ECI by assisting D. COUCH in: (a) converting the propriety technology owned by ECI for their own use in violation of the Florida Trade Secrets Act; and (b) usurping the corporate opportunity of ECI Company by tortiously interfering with its advantageous business relationship with Taggart Global, LLC.

  63. In furtherance of the conspiracy and by virtue of their combination, the Defendants were able to commit overt acts by, inter alia, participating in the furtherance of the breaches of D. COUCH's duty of loyalty to ECI, as set forth herein.

  64. As such, all of Defendants agreed between themselves to do unlawful acts, committed overt acts in furtherance and pursuance of their conspiracy to interfere with ECI's rights, causing substantial damages to ECI.

  65. The conduct of the Defendants were willful and malicious and with the intent to injure ECI, and has caused it damages.

  WHEREFORE, ECI respectfully requests that this Court enter an Order rendering judgment against all Defendants, jointly and severally, for compensatory and consequential damages, pre-

judgment interest, the cost of bringing this action, and for all other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

**GRANER LAW GROUP, P.A.**
720 East Palmetto Park Road
Boca Raton, FL 33432
(561) 750-2445 [Office]
(561) 750-2446 [Facsimile]

_____
Thomas U. Graner
Florida Bar No.: 905577

*Attorney for the Plaintiff*
